## Commonwealth ex rel. Buonocore v. Buonocore

*Thomas L. Kelly*, for petitioner.
*Louis J. Sinatra*, for respondent.

TOAL, J., January 6, 1975—This is an action brought under the Revised Uniform Reciprocal Enforcement of Support Act (1968), December 6, 1972, P.L. 987 (no. 291), sec. 42, 62 PS §§2043-1,

et seq., by a husband against his wife seeking support for two children, Teresa Buonocore (fourteen years old), and Bernard Buonocore (nine years old). After a hearing, the court entered an order granting support for the children from their mother. From this order an appeal has been taken necessitating this opinion.

Petitioner, Bernard Buonocore, and respondent, Agnes Buonocore, were married on May 17, 1958, and are the parents of the two minor children here involved. The parties lived together in a single-family dwelling in Wilmington, Delaware, until the wife left her husband and children on May 25, 1973. The wife moved to Morton, Delaware County, and her husband and children remained at the family home in Wilmington, Delaware. Mrs. Buonocore, at the time of the hearing, stated that she was living with her sister in Media, Delaware County, Pa.

Petitioner has had the full responsibility for the care and maintenance of the children since the separation. His wife has given no assistance in the care of the children nor contributed to the financial needs of the children since she left. Both parties are employed by the Westinghouse Corporation. An order for support in the amount of $15 per week per child was entered against Mrs. Buonocore.

Respondent contends, first, that, under the circumstances of this case, a mother of minor children cannot be ordered to contribute to their support and, secondly, that even if there was authority for such an order, the court abused its discretion in entering an order against respondent, considering the earnings and expenses of the parties. In addition, respondent claims that the court erred in certain evidentiary rulings.

As previously stated, this action was commenced

under the Uniform Reciprocal Enforcement of Support Act, supra. Section 7 of that act provides in part: "Duties of support applicable under this act are those imposed under the laws of any state where the obligor was present for the period during which support is sought." Obligor, defined under section 2 of the act, means "any person owing a duty of support or against whom a proceeding for the enforcement of a duty of support or registration of a support order is commenced." In the present case, it is clear that the laws of the Commonwealth of Pennsylvania are to be applied. The question to be answered is whether the obligor, in this case Mrs. Buonocore, has a duty of support under the laws of the Commonwealth of Pennsylvania.

In this Commonwealth, it was long recognized that the primary duty for child support was that of the father: Commonwealth ex rel. Warner v. Warner, 194 Pa. Superior Ct. 496, 168 A. 2d 755 (1961); Commonwealth ex rel. Kreiner v. Scheidt, 183 Pa. Superior Ct. 277, 131 A. 2d 147 (1957). However, with the enactment of the Equal Rights Amendment to the Constitution of this Commonwealth[1] the law as to the rights and legal responsibilities of men and women has changed. As rights are expanded, so too should the legal responsibilities connected with these rights be expanded.

Our Supreme Court, in Conway v. Dana, 456 Pa. 536, 318 A. 2d 324 (1974), a case involving a father's petition to reduce a support order, rejected prior decisions that a father had the principal burden of financial support of minor children solely because of his sex and without regard to the actual

---

1. "Equality of rights under the law shall not be denied or abridged in the Commonwealth of Pennsylvania because of the sex of the individual:" Pa. Constitution, Article 1, §28 (1971).

circumstances of the parties. The court stressed that in matters of child support, the primary concern is the best interests of the child and held that: "Support, as every other duty encompassed in the role of parenthood, is the equal responsibility of both mother and father. Both must be required to discharge the obligation in accordance with their capacity and ability."

On the basis of Conway v. Dana, supra, a mother has been required to contribute to the support of her minor children, even though they are in the custody of their father. See Armand Centraccio v. Priscilla Meinhold, Allegheny Co., D-1304 of 1974, 171 L. I. 81 (10/25/74).

The obligation of child support is a matter of economics and no longer arbitrarily falls on the father because of his sex. The obligation is a parental responsibility to be shared by both mother and father to the extent of their capacity and ability.

Statutory authority is found in The Support Law[2] interpreted in the light of the Equal Rights Amendment, supra, and Conway v. Dana, supra, to fix the responsibility of respondent to support her children under the circumstances of the present case. Section 3 of the Support Law provides, inter alia: "the . . . wife, . . . and mother of every indigent person, whether a public charge or not, shall, if of sufficient financial ability, care for and maintain, or financially assist, such indigent person at such rate as the court of the county, where such indigent person resides shall order or direct."

"Indigent" within the meaning of this act is not limited to those who are completely destitute and helpless. It encompasses those persons without

2. Act of June 24, 1937, P.L. 2045, sec. 3, as amended, 62 PS §1973.

sufficient means adequately to provide for their maintenance and support themselves: Commonwealth ex rel. Home for the Jewish Aged v. Kotzker, 179 Pa. Superior Ct. 521, 118 A. 2d 271 (1955). We find that the father in the present case cannot adequately provide for the maintenance and support of the minor children and that they are indigent within the meaning of the act: Commonwealth ex rel. Goodman v. Delara, 219 Pa. Superior Ct. 449, 281 A. 2d 751 (1971).

Accordingly, Mrs. Buonocore has a duty to contribute to the support of her minor children in accordance with her capacity and ability.

We next must determine the ability and capacity of both parents to contribute to the financial support of the children.

Petitioner is employed as a crane operator and has an average net income of $166 per week, including overtime work. Respondent is a production coordinator, with net earnings amounting to $140 per week.[3] The expenses for the maintenance of the two children are approximately $113 per week. This amount was not seriously contested or contradicted by respondent. Petitioner claimed expenses amounting to $127 per week for himself and respondent claimed expenses of $144 per week for herself.

Considering the combined income of the parties and their claimed expenses, it is obvious that there is not enough income to meet expenses.

3. At the time of the support hearing, both parents had just received pay increases. Respondent testified that she is a salaried employe and that, with the increase, her net salary is $140 per week. Petitioner is paid on an hourly basis and received an increase of $.16 per hour, which he testified would amount to about $4.00 each week, which amount has been included by the court in the $166 amount.

Some of the weekly expenses listed by respondent, in view of the circumstances, are inflated. She is living with her sister in a house owned by her sister. She lists as part of her weekly expenses $5 for telephone, $15 for clothing, in addition to dry cleaning, $15 for entertainment, $30 for personal needs and $35 for miscellaneous. More reasonable expenditures for these items can reduce her weekly expenses by $40.

Little can be trimmed from the expenses of petitioner. In addition to the fixed expenses of housing and utilities, petitioner lists $10 for clothing, $5 for personal needs, $10 for entertainment, $2.14 for personal insurance and $8 for baby sitting. These are reasonable expenditures. The baby sitting expense is a necessity, since petitioner must have the children cared for while he is working. This is particularly so in the summer, when the children do not have school. Since the family unit now consists of petitioner and two children, food costs now estimated separately at $25 for petitioner and $40 for children can be reduced. Under the circumstances, petitioner's automobile expenses of approximately $50 a week should be reduced. We realize that this figure includes repayment of a loan from petitioner's mother to purchase the automobile. However, because of the financial strain petitioner finds himself in, consideration should be given to reducing or deferring the monthly payments on the loan. At best, petitioner could reduce expenses $20 a week.

Under the circumstances of this case, we feel that the support order of $30 per week was fair and reasonable. Respondent's income represents 46 percent of the combined net income of the parties. The support order represents 21 percent of her net

income and only 26 percent of the financial needs of the children. Even if the weekly needs of the children were reduced to $45 per child, respondent would be paying for only one-third of the financial needs of the children, despite the fact that she has 46 percent of the combined net income.

However, in setting a support order, this court has recognized that a comparison of only net income does not accurately reflect the individual capacity or ability to support. A better picture can be determined from comparing the useable incomes of the parties, that is, the portion of net income remaining to each parent after payment of personal living expenses and maintenance: Commonwealth ex rel. Evans v. Evans, 61 Del. Co. 649 (1974)

Deducting respondent's personal living expenses of $104[4] from her net income of $140, we find that her useable income is $36. With the child support order set at $30, she is left with a balance of $6.

On the other hand, petitioner has useable income of $59 when we deduct his personal living expenses of $107[5] from his net income of $166. It is obvious that petitioner does not have sufficient useable income to meet the financial needs of the children, even after receiving the $30 contribution from respondent, unless the cost of supporting the children can be reduced or petitioner can supplement his present income.

In setting the support order, we took into consid-

---

4. This amount represents the claimed expenses of respondent of $144, reduced by the amount of $40, which we found reasonable under the circumstances.

5. This amount represents the claimed expenses of petitioner of $127, reduced by the maximum amount we thought possible under the circumstances.

eration the fact that petitioner has a substantial asset, namely, the family house, in which respondent, by a separation agreement, relinquished all her right, title and interest to petitioner. In addition, we considered the fact that respondent relinquished also all her right, title and interest in the jointly owned personalty.

Respondent contends that the court erred in not permitting her to give an opinion as to the fair market value of petitioner's house to show the extent of his estate. No attempt was made to lay any foundation for this testimony. Respondent relies on the proposition that an owner of property is competent to give an opinion of its value. While this is an accurate statement of the rule of evidence, respondent was not an owner of the property in question at the time of the support hearing. Respondent did give a description of the house and testified that the purchase price of the house eight years ago was $20,000. She further testified that the balance due on the mortgage at the present time was approximately $8,000.

Even assuming that we did err in not permitting respondent to give her opinion, such error would be harmless under the circumstances of this case. We would give little weight to the opinion of respondent, having observed her as a witness, without a basis for such opinion being demonstrated to the court, other than the fact of ownership.

Furthermore, in setting the support order, we took into consideration, as previously indicated, the fact that the house was a substantial asset of petitioner.

Finally, respondent contends that the court erred in permitting the testimony of Mr. Baird, claiming it was not relevant and was prejudicial. The tes-

timony of Mr. Baird was offered to impeach the credibility of respondent. She testified she lived with her sister and paid rent to her. Also, she testified she used her sister's 1967 automobile to get to work, paying weekly car expenses of $15. Petitioner, by Mr. Baird's testimony, attempted to show respondent was, in fact, living in an apartment leased to a man in the apartment complex where Mr. Baird was the resident manager and that respondent used a late model automobile. For the purpose of impeachment, the testimony was relevant and properly admitted. Nevertheless, in fixing the amount of the support order, we considered respondent as living with her sister and using her sister's car, in accordance with her testimony.

An order for support must be fair and not confiscatory: White v. White, 226 Pa. Superior Ct. 499, 313 A. 2d 776 (1973); Commonwealth ex rel. Jacobson v. Jacobson, 188 Pa. Superior Ct. 433, 146 A. 2d 91 (1958). In the present case, due consideration was given to the earning ability of the parties, their reasonable living expenses and the needs of the children. We are of the opinion that the order entered for child support was just and proper.